# ALICE P. PRESCOTT

*v.*

# WILLIAM MAXWELL.

1. MECHANIC'S LIEN — *recovery can not be had beyond the amount claimed in the petition.* In a proceeding to enforce a mechanic's lien, under the act of 1863, the plaintiff recovered the amount claimed in his petition, together with forty-seven dollars as interest thereon: *Held,* that the judgment was erroneous, to the extent of such sum beyond the amount claimed; if plaintiff was entitled to interest, he should have claimed it in his petition; he could not recover beyond the amount so claimed.

2. SAME—*act of 1863, construction of.* Where a party contracted to pay for the work and materials on a certain building, as the work progressed, reserving the right to retain ten per cent., for his own security, and before the building was completed paid the contract price in full: *Held,* that such owner was not liable for work performed by an employee of such contractor, begun and completed nearly two months after such payment in full; that having once paid for it, he was discharged from payment a second time.

3. SAME— *notice and specifications must be filed, to stop payments to original contractor.* In order to prevent an owner from making payment to the original contractor, such sub-contractor must, as required by the second section of the act, file his specifications, and give the proper notice; otherwise, payment can not be prevented.

4. INSTRUCTIONS — *must be based upon the evidence.* An instruction which has no basis in the evidence is erroneous.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the case.

Messrs. HELM & HAWES, for the appellant.

Mr. JOHN BORDEN, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a petition, by a sub-contractor, to enforce a mechanic's lien, under the act of 1863. This act is applicable to a few counties only, in the State, and its construction is now before us for the first time.

The original contractors were Clancy & Walsh, who engaged to finish the building complete, for three thousand one hundred dollars, to be paid as the work progressed, with the privilege reserved to the owner of the lot to retain ten per cent., as her security.

The contract was made June 9, 1864, and the whole amount of the payments, without any reservation, was made to the contractors on and before September 26, 1864, although they had not then completed the work.

On the 26th of October, 1864, the petitioner, Maxwell, took the contract, from Clancy & Walsh, to do the plumbing work then remaining undone on the house, for the stipulated sum of two hundred and thirty-nine dollars, and on the refusal of the defendant to pay this demand, he filed his petition for a mechanic's lien, and, on the trial before a jury, under the instructions of the court, a verdict was rendered for the petitioner for two hundred and eighty-six dollars. A motion for a new trial was made and overruled, and judgment entered on the verdict.

To reverse this judgment the defendant has appealed to this court, complaining of the second instruction given for plaintiff, and refusing those asked by the defendant, and for rendering judgment for more than was claimed in the petition.

Against this objection it is urged by appellee, that interest legitimately followed on the presentation and refusal of defendant to pay the claim. If this were so, it should have been claimed in the petition. The whole amount demanded, was two hundred and thirty-nine dollars, and beyond that there could be no recovery.. The case of *The Protective Union* v. *Nixon*, 1 E. D. Smith 671, (N. Y.,) shows, that on presenting the account for payment, or giving notice thereof, interest was

claimed. The notice is filed to create the lien, and that must show the amount claimed. The petitioner has recovered forty-seven dollars more than he was entitled to, and to that extent the judgment was erroneous.

But there is a more important question behind, arising upon the instructions.

The court gave, for the petitioner, the following instruction, to which exception was taken :

"The jury are instructed that, even though they should believe, from the evidence, that the defendant had paid the full contract price, prior to the work done by the plaintiff, yet, if they further believe, from the evidence, that such payment was made in violation of the terms of the written contract between the defendant and the original contractors, and that defendant, or her agent, fraudulently misrepresented or concealed the fact of payment, by reason whereof the plaintiff was induced to, and did, perform the work, and furnish the material, under the belief there was money due on the contract, and if they further believe, from the evidence, that the plaintiff did the work proved to have been done on the building in question, relying on the terms of the contract for his pay, they should find for the plaintiff, provided the plaintiff has, in other respects, established his claim."

A slight examination of this instruction will show its impropriety. It tells the jury, if a party, contracting to pay for the work and materials on a building, as the work progresses, reserving the right to retain ten per cent., for his own security, pays the whole amount due on the contract, reserving nothing, before the building is completed, such payment can not be allowed, to the prejudice of any employee of the contractor, and that the same is a violation of the terms of the contract. Was it ever before held that a party could not pay in advance for work to be done for him, or that he could not

waive a provision in his contract intended for his own benefit and protection? Is it possible a property owner, making valuable improvements upon his lots or land, before he can pay the contractor, must ascertain how many employees, for the statute includes them all, the contractor may have, and how much money he may owe them, before he can venture to discharge his own obligations? Can it be true, an employee or sub-contractor, made so without the interference of the owner of the lot, can come between the owner and contractor, and prevent the owner from making payment to the contractor, even if not required so to do, by the contract? Certainly not, unless he files specifications and gives the notice as required by the second section of the act, before payments in full are made to the contractor. The law is not designed to relieve a sub-contractor, or employee, of the necessity he is under to use ordinary diligence in the protection of his own interests. He is not relieved from the obligation, before he contracts, to know how his principal stands with the party with whom he has contracted; whether there is any thing due him or not, and whether he has the means of complying with his contract. A month before the petitioner undertook to do the plumbing work, and even two months before he gave the defendant's agent notice of filing the specifications, the defendant had paid every dollar she owed on the contract, and this petitioner could have known, by inquiring in the proper direction.

There is also worked up into this instruction an element which has no place in the transaction. Not a witness, nor even the petitioner, alleges any fraudulent misrepresentation, or concealment of any fact important to the petitioner to know, and which the defendant was bound to communicate to him. Nothing of the kind, yet the minds of the jury were drawn to the consideration of facts not proved, and not alleged, and of which no semblance existed. And again, how could the jury say, from the evidence, that petitioner relied

upon the terms of the original contract for his pay? Where is the testimony on this head? Why is it not as probable, or more so, that he relied on the responsibility of those with whom he had contracted, who, it appears, were master-builders and contractors, and presumed to employ large capital?

The instruction was wrong in all its parts, and should not have been given.

In the modification of the defendant's instructions, this same element of fraud is incorporated, which, having no basis in the evidence, renders those instructions erroneous.

The fact that the agent of the defendant said, after the work was done, on being inquired of how the account stood between the defendant and the contractor, that there was not more than one hundred dollars due on the contract, amounts to nothing. Had it been said before the petitioner undertook the work, it might be a plausible inference, that this was, in part, the inducement for undertaking the work, on his part. But it was said after the work was done. But the agent spoke from recollection only; the fact was, that nothing was due. The petitioner could not have been deceived by this, for he had then done the work.

There is not the least ground on which to base fraud, or concealment, on the part of defendant, or her agent.

The fact that appellant's agent called at appellee's shop, to know if he intended to do the work he had engaged, with the original contractors, to do, was quite natural, and compromised in no manner his principal. The evidence shows there had been delay in the prosecution of the work, and it was, in fact, left uncompleted by the contractors when they had received their pay in full. They had told the agent, they had employed appellee to do the plumbing. What more natural, or reasonable, than that the agent should endeavor to find out if he did intend to do it. It was not the agent's business to tell him there was no money due his employers. That was a hazard he run when he engaged to do the work,

and he should have satisfied himself of that fact before he undertook it. How could the agent know what relations existed between the contractors and this petitioner?

The verdict does the defendant great injustice. It was evidently occasioned by these instructions, and as they, in our opinion, were wrong, the judgment must be reversed, that a new trial may be had. It would be great injustice to compel the defendant to pay twice for work, for which she has once fully paid, and without notice of any existing claim to forbid her, and when none did, in fact, exist.

*Judgment reversed.*