BOSTON PLATE & WINDOW GLASS COMPANY *vs.* JOHN BOWEN CO., INC.

Suffolk. February 6, 1957. — April 12, 1957.

Present: SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Contract*, Performance and breach, Building contract, Subcontract. *Practice, Civil*, Amendment.

A general contractor for public building construction whose contract had been adjudicated to be void was, by reason of impossibility of performance, not liable to a subcontractor for breach of the subcontract in refusing to permit the subcontractor to perform it where it appeared that there was no warranty therein that the general contract was valid, that the general contractor and the subcontractor tacitly assumed its validity, and that, although its invalidity was due to failure of the general contractor to comply with the statutory bidding procedure, he would not have been the lowest bidder and could not have been awarded the general contract if he had complied with such procedure. [699–701]

An action by a subcontractor against the general contractor on a public building construction project, wherein the plaintiff's claim as stated in his declaration was solely for breach of the subcontract by the defendant through refusing to allow the plaintiff to perform it upon an adjudication that the defendant's general contract was void, and the defendant was held by this court not liable on that claim by reason of impossibility of performance, was on the record not an appropriate case for the allowance of an amendment to permit the plaintiff to recover on quantum meruit certain damages awarded in the trial court in connection with matters preliminary to the plaintiff's performance of the subcontract. [701–702]

---

CONTRACT. Writ in the Superior Court dated October 7, 1953.

Motions for immediate entry of judgment filed by the plaintiff and by the defendant were heard by *Reardon,* C.J.

*Robert G. Dodge,* (*Robert F. Bradford* with him,) for the defendant.

*John Cancian,* for the plaintiff.

SPALDING, J. This is an action of contract in which the plaintiff seeks damages arising from the defendant's alleged refusal to permit it to perform two subcontracts under which the plaintiff agreed to supply to the defendant as general contractor certain labor and materials for the erection of the Lemuel Shattuck Hospital. The defendant's substitute answer sets up the defence that its performance of the subcontracts became impossible by reason of the decision of this court in *Gifford* v. *Commissioner of Public Health,* 328 Mass. 608, in which the defendant's general contract with the Commonwealth for the erection of the hospital was held invalid.

Each party filed a motion, accompanied by affidavits, for the immediate entry of judgment in its favor under G. L. (Ter. Ed.) c. 231, § 59, as appearing in St. 1955, c. 674, § 1. Certain facts in addition to those contained in the affidavits were contained in a stipulation filed by the parties.

From the affidavits and stipulation the following undisputed facts appear. On November 16, 1951, the Commonwealth, acting through its department of public health and with the approval of the public building commission, awarded a general contract in the amount of $11,179,526.25 to the defendant to construct a chronic diseases hospital in the Forest Hills section of Boston. The lowest bid for the "glass and glazing" subcontract had been filed by the Salem Glass Company, and this bid was carried by the defendant in its original bid for the general contract. However, due to the fact that it was not accompanied by proper security, Salem's bid was rejected by the department of public health which directed the defendant to substitute the plaintiff as the lowest qualified bidder for this work. Accordingly, on Novem-

ber 27, 1951, the plaintiff and the defendant entered into a subcontract for the glass and glazing work required under the general contract.  On January 3, 1952, the plaintiff and the defendant entered into another subcontract for the "miscellaneous non-ferrous metal work" called for under the general contract.  On April 8, 1952, this court invalidated the award of the general contract to the defendant. *Gifford* v. *Commissioner of Public Health*, 328 Mass. 608. The defendant thereupon notified the plaintiff that it could not proceed with the work under either subcontract.  The plaintiff at this time had not actually begun the work, but it had made preparations to do so and had incurred certain expenses in connection therewith.

After a hearing on the respective motions for immediate entry of judgment, the judge allowed the plaintiff's motion "subject to an assessment of damages to cover cost of estimates, drawings, labor and all other expenses inclusive of allocable overhead charges relative to plaintiff's contract with the defendant, but exclusive of any profit."  The defendant's motion for immediate entry of judgment was denied.  The plaintiff appealed from the ruling "excluding any profit from its allowable damages."  The defendant excepted to the order denying its motion for judgment and allowing in part the plaintiff's motion.  The defendant also appealed from this order.[1]

Following a hearing on the issue of damages, there was a finding for the plaintiff in the sum of $4,293.06.[2]

The defendant contends that it is not liable on its contracts with the plaintiff because our decision in *Gifford* v. *Commissioner of Public Health*, 328 Mass. 608, rendered performance of these contracts impossible.  It is settled by our decisions that one who has bound himself by an absolute agreement for the performance of something not in itself unlawful is not released from his obligation by the mere fact

---

[1] The defendant does not now press its appeal.

[2] The plaintiff appealed from this finding in so far as it failed to include anticipated profits.  The defendant took exceptions to certain rulings on the hearing on damages which were incorporated in a second bill of exceptions. These exceptions are now waived.

that in consequence of unforeseen accidents the performance of his contract has become impossible; he must respond in damages for the breach of his agreement. *Rowe* v. *Peabody*, 207 Mass. 226, 233. *N. J. Magnan Co.* v. *Fuller*, 222 Mass. 530, 533. *Beacon Tool & Machinery Co.* v. *National Products Manuf. Co.* 252 Mass. 88, 90. "But it is equally well settled that where from the nature of the contract it appears that the parties must from the beginning have contemplated the continued existence of some particular specified thing as the foundation of what was to be done, then, in the absence of any warranty that the thing shall exist, the contract is to be construed not as a positive contract, but as subject to an implied condition that the parties shall be excused in case before breach performance becomes impossible from the accidental perishing of the thing without the fault of either party. . . . The misfortune which has occurred releases both parties from further performance of the contract and gives no right to either to claim damages from the other." *Hawkes* v. *Kehoe*, 193 Mass. 419, 423–424. *Butterfield* v. *Byron*, 153 Mass. 517, 519. *Angus* v. *Scully*, 176 Mass. 357. *Young* v. *Chicopee*, 186 Mass. 518, 520. The question is essentially one of construing the contract. *Rowe* v. *Peabody*, 207 Mass. 226, 233. *John Soley & Sons, Inc.* v. *Jones*, 208 Mass. 561, 567.

We think that the defendant's performance of the subcontracts with the plaintiff was excused. In the *Gifford* case, the defendant's general contract with the Commonwealth was invalidated. There is nothing in the subcontracts from which we can find a warranty that the general contract was valid. On the contrary, there is no indication that the parties even contemplated the possibility that the general contract was invalid. Compare *John Soley & Sons, Inc.* v. *Jones*, 208 Mass. 561. It is apparent that the validity of the general contract was tacitly assumed by both parties. Therefore, since the validity of the general contract was essential to the performance of the subcontracts, its validity was a condition to the continued existence of obligations under the subcontracts. See Corbin on Contracts, § 1321.

The plaintiff, however, contends that the defence of impossibility is not available to the defendant because the impossibility was the result of the defendant's own conduct. See *Canada* v. *Canada*, 6 Cush. 15, 18; *St. John* v. *St. John*, 223 Mass. 137, 139; *Proctor* v. *Union Coal Co.* 243 Mass. 428, 432; Restatement: Contracts, § 457. See also *Gilbert & Barker Manuf. Co.* v. *Butler*, 146 Mass. 82, 85. We do not agree. The plaintiff is seeking to recover for breach of the subcontracts and not on quantum meruit as in *M. Ahern Co.* v. *John Bowen Co. Inc.* 334 Mass. 36, and cases cited at page 39. In order for the plaintiff to recover for breach of the subcontracts, it must appear not only that the impossibility was caused by the defendant but also that, except for the defendant's conduct, there would have been in existence valid and enforceable contracts. That is not the situation here.

In the *Gifford* case, we held that the general contract with the Commonwealth was invalid because the defendant failed to comply with the procedure established by the Legislature for the award of such contracts. "The bids and subbids . . . when viewed as the Legislature must have intended, show that Bowen was not the lowest bidder . . ." (328 Mass. 608, 620). It cannot, therefore, rightly be said that but for the defendant's conduct which resulted in the decision in that case the subcontracts between the parties here would have been in effect. The defendant obtained the general contract in the first place by failing to comply with the correct procedure prescribed for bidding. But had it complied with that procedure it would not have been the lowest bidder and could not have been awarded the general contract. The performance of the subcontracts depended on the general contract. From the legal standpoint, performance of the subcontracts was actually impossible from the outset. Williston, Contracts (Rev. ed.) § 1933. Restatement: Contracts, § 456. Consequently we hold that the defendant is not liable in damages for breach of the subcontracts.

The plaintiff argues, however, that even if this is a case

of excusable impossibility, it should, under *M. Ahern Co. v. John Bowen Co. Inc.* 334 Mass. 36, be allowed to recover the damages awarded in the court below on quantum meruit, that is, the "cost of estimates, drawings, labor and all other expenses inclusive of allocable overhead charges relative to plaintiff's contract." We do not think that the plaintiff is entitled to recover these damages here. Clearly it could not recover them under its declaration, which was based solely on breach of contract and not on quantum meruit. To be sure, in appropriate instances, we may allow an amendment to permit the pleadings to conform to the proof. G. L. (Ter. Ed.) c. 231, § 125. See *Bucholz* v. *Green Bros. Co.* 272 Mass. 49, 55–56; *Seder* v. *Kozlowski,* 304 Mass. 367, 370; *Sacks* v. *Martin Equipment Co.* 333 Mass. 274, 281. Such amendments are appropriate where it is apparent from the record as a whole that the case was fully and fairly tried upon the real issues of fact involved. *New England Foundation Co. Inc.* v. *Elliott & Watrous, Inc.* 306 Mass. 177, 180. This is not such a case. We need not consider — and intend no intimation — whether and to what extent, under appropriate pleadings, in an extension of the principle established in *M. Ahern Co.* v. *John Bowen Co. Inc.* 334 Mass. 36, recovery may be had for payments made or obligations reasonably incurred in preparation for performance of a contract after it has been executed and delivered and is reasonably understood to be in effect. See Williston on Contracts (Rev. ed.) § 1976. The second bill of exceptions shows that the damages awarded included items outside such categories.

It follows that the entry must be

> *Defendant's exceptions sustained.*
> *Defendant's second bill of exceptions and*
> *defendant's appeal dismissed.*
> *Judgment for the defendant.*